[No. 1720.]

THE STATE OF NEVADA, RESPONDENT, *v.* CARSON AND COLORADO RAILWAY COMPANY, A CORPORATION, ET AL., APPELLANTS.

1. TAXATION—INCREASING VALUATION—STATUTES CONSTRUED. The act of March 16, 1901, p. 61, c. 50, sec. 1, as amended by Stats. 1903, p. 95, c. 69, requires the state board of county assessors to establish a valuation of railroads, etc., every January, and provides that the county boards of equalization may only equalize taxes where a valuation has not been fixed by the state board. Under Comp. Laws, 1084, between the date of levy of taxes and September 1st the county assessor must ascertain the value, etc., of, and list and assess, all taxable property. Under section 1081 all property in the state is taxable except, etc. Section 1079 makes every tax a lien against the property assessed, and provides a lien shall attach upon land for personal taxes upon the day taxes are levied in each year, on all property then in the state, and all other property whenever it reaches the state. *Held*, that all property must be assessed which comes into existence either as additions or otherwise between the first Mondays in March and September of each year, if it has not been taxed for that year; that, if property assessed by the state board in January enhances in value because of betterments before the first Monday in September, the assessor should assess the property as assessed by the board plus the increased valuation, and, if he fails to do so, the county board may equalize the property at its full cash value, the inhibition upon that board equalizing the valuation of property fixed by the state board applying only when such property remains in substantially the same condition, and so a county board could increase the valuation of railroad property, where between the date when the state board fixed the valuation and the date of the county board's meeting in September part of the road was changed from narrow to broad gage.

2. SAME—DEFENSES. If, in a suit to recover disputed taxes, defendant desires to raise an issue of excessive valuation, he should prepare his answer under Comp. Laws, 1124, providing what defenses may be set up in tax suits.

3. SAME—NOTICE—DIRECTORY PROVISION. Comp. Laws, 1098, providing for the publication of notice of the increased valuation of taxable property by a board of equalization, is merely directory.

4. APPEAL—REVIEW—CONCLUSIVENESS OF FINDING. Under the rule that a finding supported by evidence will not be disturbed, the trial court's findings in a tax suit that the property taxed was defendant's and that the proper notices were given a railroad company of an increased valuation of its property is conclusive.

5. TAXATION—DEFENSES—PLEADING. Since Comp. Laws, 1124, in defining what defenses may be made in tax suits, when title to the property is denied, provides that defendant must deny all interest at the time of assessment, a defense that the property belonged to another when the county board of equalization increased the valuation was not available where defendant failed to allege that at the time of assessment the property was not its property.

6. Same. Though the act of February 25, 1893 (Stats. 1893, p. 48, c. 48, sec. 26), providing that the clerks of boards of equalization shall enter upon the assessment rolls all changes made by the boards, is seemingly in conflict with the statute directing the auditors to place the changes on the rolls, the act being the latest expression of the legislative will, it is proper for the clerks to enter the changes.

Appeal from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *Frank P. Langan*, Judge.

Action for disputed taxes by The State of Nevada against The Carson and Colorado Railway Company, a corporation, and others. From a judgment for plaintiff and an order denying a new trial, defendants appeal. **Affirmed.**

The facts sufficiently appear in the opinion.

*George D. Pyne*, for Appellant:

I. "The county board of equalization shall not have the power to equalize any property upon which a valuation has been placed by the said board of county assessors." "Boards of equalization are creatures of the statute and have no authority or jurisdiction but that given by statute, and it must be expressly granted." (*State* v. *Washoe County*, 5 Nev. 317; *State* v. *C. P. R. R. Co.*, 9 Nev. 79.)

II. The additions and changes in the assessment roll were not entered in the assessment roll by the person authorized. The changes which were made by the board of equalization were made by J. G. Atchison, clerk of the county board of equalization, while Comp. Laws, 1098, says that the changes and additions must be noted by the clerk of the board and should be reported to the auditor, who will make the changes in the original assessment roll. The auditor never made any of the changes; they were made by the clerk of the board. Changes made by other officers than those authorized are illegal. (*Ferris* v. *Coover*, 10 Cal. 633; *People* v. *Reynolds*, 28 Cal. 109; Comp. Laws, 1100, 1101.)

III. The law contemplates that the list of property the valuation of which has been added to on the assessment roll shall not be stated. This notice should have stated the valuation which was made upon the main track and the side

track, and the added valuation of the rolling stock, none of which amounts are so specified. The notice is entirely misleading and does not comply with the. law, and defendant could in no way obtain the knowledge necessary from reading that notice that its valuation had been raised nearly half a million dollars. The board of equalization has no power to raise the valuation of land as fixed by the assessor without notice to the owner. The general notice of the sitting of the board by publication does not amount to the notice required. (*Patton* v. *Green*, 13 Cal. 325.)

IV. If a notice is required to be given personally and by publication, a failure in either is fatal. (*Appeal of Powers*, 29 Mich. 304.) Notice is indispensable, prerequisite, and without it the court has no jurisdiction in the premises. When the law prescribes a particular or specific manner for making advertisement, or giving notices, no court or officer has a right to substitute another or different mode. (*Lagrone* v. *Rams*, 48 Mo. 538; *Yende* v. *Wheeler*, 9 Tex. 421; *Pitts* v. *Burth*, 15 Tex. 454; *Clarke* v. *Rowan*, 53 Ala. 401.) "The advertisement must contain a particular statement of the amount of taxes added on each lot separately." (*Corporation of Washington* v. *Pratt*, 8 Wheat. 686.)

V. The following provisions of the statute are the only ones bearing directly upon the question under discussion, and for convenience in referring to them, these excerpts from the Compiled Laws are given: "Section 1078. The board of county commissioners of each county shall, on or before the first Monday of March of each year, fix the rate of county taxes for such year, designating the number of cents on each one hundred dollars of property levied for each fund, and shall levy the state and county taxes upon the taxable property of the county." (Comp. Laws, 1079, 1084, 1095, 1096, 1098.)

VI. There is nothing in the statute to indicate the date which fixes the assessable status of the property, except the provisions of section 1078 that "the board of county commissioners of each county shall on or before the first Monday of March of each year, * * * levy the state and county taxes upon the taxable property of the county," unless it

could be said that the time the lien attaches determines its assessable status.    There must be some time certain when property must be in existence to be assessable for any given fiscal year.    Any other construction of the statute would lead to the taxation of property at full cash value, though it may only have existed during a small portion of the year, and thus bring the assessments squarely within the inhibition of section 1, article X of the constitution, which guarantees "a uniform and equal rate of taxation and assessment." (Comp. Laws, 148.)

VII.    Section 1 of article IX of the constitution (Comp. Laws, 144) provides that "the fiscal year shall commence on the first day of January in each year." Property not taxable on the day when the levy is made is not taxable during that year and must be passed to the next year; and, even if this were not true, property created after the assessment had been made by the assessor could not be assessed for that fiscal year.    In New York the taxable status of property is determined by its condition on the second Monday in January. (*Sisters of St. Francis* v. *Mayor*, 51 Hun, 355; *People* v. *Wells*, 89 N. Y. 847.)

VIII.    To say that in Nevada there is no fixed time in the year to which the assessment shall relate for the purpose of determining what property in the state is subject to taxation for the current year, would be to concede that in all cases, such as this, there must be a most flagrant violation of the constitutional guarantee of uniform taxation.    Uniformity of taxation implies uniformity in the mode of assessment as well as in the rate of percentage charged.    (*Santa Clara Co.* v. *S. P. R. R.*, 18 Fed. 385; *R. R. Tax Cases*, 13 Fed. 735; *Exchange Bank* v. *Hines*, 3 Ohio St. 1; *State* v. *Township of Reedington*, 36 N. J. Law, 70; *Dundee N. T. I. Co.* v. *Parrish*, 24 Fed. 197.)

IX.    It was held in *State* v. *Eastabrook*, 3 Nev. 173, that where property is in this state at the time the levy is made the owner becomes liable for the tax, although he may remove the property from the state before the value thereof is assessed.    And, *vice versa*, he could not be liable for taxes

on property created after the levy was made for that portion
of the year. The defendant therefore claims that the trial
judge erred in his findings and judgment; that the board of
equalization had no authority to equalize the assessment of
defendant and that the increase in valuation of its property,
and thereby the increase in its taxes, is unjust, unreason-
able, excessive, and illegal, and was made contrary to law, and
that the valuation as fixed by the state board of assessors
for the year 1905, and as assessed by the assessor, was a fair
and adequate valuation to be fixed upon the property, and
their valuation should not have been disturbed.

*C. E. Mack, A. H. Swallow*, District Attorney of Esme-
ralda County, and *W. J. Henley*, for Respondent:

I. The question arises, whether appellant can, under any
circumstances, demand a reversal of the judgment in the
face of its admission that it has not been prejudiced or
injured by the increase of the valuation of its property.
The rule seems to be that it cannot be heard. (Hayne, New
Trial and Appeal, 286; *Mitchell* v. *Bromberger*, 2 Nev. 345;
*Conley* v. *Chedic*, 7 Nev. 336; *Todman* v. *Purdy*, 5 Nev. 238;
*Caples* v. *C. P. R. R. Co.*, 6 Nev. 265; *Chiatovich* v. *Davis*,
17 Nev. 133; *Re Smith*, 4 Nev. 254; *Cahill* v. *Hirschman*,
6 Nev. 57; *Brown* v. *Lillie*, 6 Nev. 244; *Quint* v. *Ophir M.
Co.*, 4 Nev. 304; *Fleeson* v. *Savage M. Co.*, 3 Nev. 157.)

II. The law of 1903, if it is to be construed as creating a
board of assessors with exclusive powers, is the unjust achieve-
ment of the legislature which enacted it. The constitution,
article X, says: "The legislature shall provide by law for a
uniform and equal rate of assessment and taxation, and shall
prescribe such regulations as shall secure a just valuation of
all property, real, personal, and possessory." This the statute
in question, if so construed, does not do. Upon the indi-
vidual county assessor is imposed the duty of assessing all
property, excepting railroads, etc., and to aid the individual
assessors in this work they are given the prerogative of
requiring verified statements from owners of taxable property
particularly describing and valuing their holdings. The law

goes further; the assessor is not bound by the statements of owners; he is given credit for some discretion in the matter of assessment, and may exercise his judgment.

III. When the legislature delegates the power to fix the rate of taxation to officers unknown to the constitution, and adds to that power to raise or diminish the valuations of the property of the citizens, it gives an opportunity to plunder the citizen, against which constitutions are framed, and the courts are bound to restrain. (*Tyson* v. *School Directors,* 51 Pa. St. 9; *Merford* v. *Unger,* 8 Iowa, 92; *Freelan* v. *Hastings,* 10 Allen, 575.)

IV. The notice was given by the clerk of the board of equalization as required by Comp. Laws, 1098. The notice was sent on September 25th, requiring the Carson and Colorado Railway Company to appear and show cause on October 2d, a period of seven days. We maintain that seven days was ample notice to defendant to travel from Carson City, or any portion of Lyon or Esmeralda Counties through which said road is operated, to Hawthorne, the county-seat of Esmeralda County. (Comp. Laws, 1098; *Hagenmeyer* v. *Board of Equalization of Mendocino County,* 82 Cal. 214.)

V. If notice was not received, it became incumbent upon appellant to establish that fact. The increased valuation of appellant's property subsequent to the meeting of the board of county commissioners was not the acquisition of new property in the sense that it would except it from the effect of the original assessment. The notice published in the *Walker Lake Bulletin,* in accordance with Comp. Laws, 1098, gave the appellant notice of the raise in valuation. Even if this notice is not as full as it could have been made, it was merely directory, and, had it been omitted entirely, it would not have relieved the obligation of the appellant to the state. (*State* v. *Northern Belle,* 15 Nev. 385; *Hart* v. *Plum,* 14 Cal. 155.)

VI. The corrections in the roll were made by the proper officer, namely, the clerk of the board of equalization. (Stats. 1893, sec. 26, p. 48.) True, section 1098 provides that the auditor shall make the changes on the roll. However, Comp. Laws, 1100, provides that the clerk of the board of equaliza-

tion shall "enter. upon the assessment roll all the changes and corrections made by the board," hence it will be seen that the last expression of the will of the legislature was followed in this matter. The point raised by defendant is in keeping with all other points raised by counsel for defendant, and shows to what desperate straits defendant is driven in order to beat plaintiff out of the taxes it justly owes.

VII.  Counsel for defendant, in closing his brief, claims the increase in the valuation was unjust, unreasonable, excessive, and illegal, when, as a matter of fact, the answer of appellant made only one issue, namely, that defendant sold the property to another corporation after the assessment was made. No other issue is tendered. During the trial defendant admitted the valuation was not excessive; hence it will be seen that every question raised in appellant's brief, save the ownership of the property, cannot be reviewed by the supreme court, for the reason the lower court could give the appellant no relief, except on the one ground. If appellant had desired to raise the question of excessive valuation, it should have prepared its answer in accordance with Comp. Laws, 1124.

VIII.  Counsel for appellant contends that increased valuation of property cannot be assessed or equalized. This position is untenable. The statute of Nevada provides that all property (except certain exemptions) shall be assessed for taxation at its actual cash value. (Comp. Laws, 1082.) The board of equalization has power and jurisdiction to equalize all property without qualification or condition. (*State* v. *Meyers*, 23 Nev. 274.)

IX.  The lien for taxes attaches on the day of levy and continues until the taxes are paid, and the taxes on personal property is held as a lien against the real estate. Alienation of property after assessment does not affect tax lien. (*Driggers* v. *Cassady*, 71 Ala. 529.)

X.  Again, if a party fails to hand in to the assessor his verified list in the first instance, admittedly he cannot claim the right of a hearing before the board of equalization. (7 Nev. 83.) Why, then, should he be heard to remonstrate against his assessment, when he has been satisfied of a con-

templated raise thereof, and fails to appear at the proper time and place, as in this case?

XI.   One who has alienated property, but permits it to be subsequently assessed to him, becomes thereby liable to pay the tax.   He must apply to the county commissioners at the proper time to have the error corrected.  (*County Commissioners* v. *Clagett*, 31 Md. 213; *Stoddert* v. *Ward*, 31 Md. 565.)

XII.   There being no proper judgment roll accompanying the appeal, it should be dismissed for the reason that the answer is not included in the judgment roll.  (Comp. Laws, 3300, 3435.)

*George D. Pyne*, for Appellant, in reply:

I.   It is strange that counsel should assert that the appellant appears in this court as one who has suffered no injury, even when from the record it appears that appellant has been subjected to an illegal judgment for the sum of $13,696.20, more than is admitted to be due, and the further sum of $9,420.43, penalties and costs of suit.   It is sheer folly to say that it has suffered no injury from the decision of the lower court.   The obligation for the payment of taxes does not rest upon contract.   Taxes are inevitable, and the law prescribed for the collection of the same must be strictly enforced.   Any failure to pursue the plain provisions of the statute necessarily results in an injury, and counsel does not cite any case which holds to the contrary.   The complaint sets out that the assessment as made was duly assessed and put upon the assessment roll, and that the said assessment was by the said board of equalization of the said Esmeralda County duly equalized as required by law.   The answer denies those averments in the complaint, and thus brings to issue the legality of the assessment of the property and the equalization by the county board of equalization of Esmeralda County, and raises the question as a defense which is set out in the statute, that of failing to comply with the provisions of the act providing for the assessing and equalization of taxes upon property, so that respondent is in error when it asserts that there was no defense set up in the answer

but that of the title to the property in question.   The legality
of the assessment and the equalization was denied, and that
was the question in issue.

II.   Counsel complains that there is no provision for the
hearing before the assessment becomes final.   The taxpayer,
as a matter of fact, has notice and may be heard before the
board.   There is nothing in the provisions of the statute
which intimates that a hearing cannot be had before the state
board of assessors, and, indeed, it is true that such hearings
have been granted at every session of the board.   Moreover,
the taxpayer has his day in court, which is an ample guar-
antee of the equal protection of the laws.   The provisions
for hearings are not more adequate in any of the states where
a state board of equalization exists, and they exist and have
been declared constitutional in almost every state of the
Union.

III.   In the pretended quotation from cases cited in the
respondent's brief, we discern no statement of any principle
of law affecting the case at bar.   The language is not con-
tained in the case cited, and it appears that counsel's quota-
tion marks have "run amuck."   Respecting the contention
of appellant that the act in question delegates legislative
powers, we need but say that the authority to assess prop-
erty is not legislative.   We cannot understand by what
mental process counsel arrives at the conclusion that an
assessment or valuation fixed by a collective body is the
exercise of a legislative function, while an assessment or
valuation fixed by the individuals of which the body is com-
posed is not the exercise of a legislative function.   Even if
counsel's contention was so serious as to demand any dis-
cussion, the act would only violate the constitution in so far
as it granted legislative power, and it would still be effective
so far as to authorize the fixing of valuations upon the
classes and species of property specially mentioned in the
act.   It is to be noted that the act of 1891 (Stats. 1891, p.
61) requires the state board of assessors to fix the valuations
on "classes of property," etc., without designating the species
of property upon which the board was authorized to act.

By the Court, SWEENEY, J.:

This is an action brought by the State of Nevada, plaintiff, against the Carson and Colorado Railway Company, *et al.*, defendants, for disputed taxes alleged to be due to plaintiff on the property of said defendants for the year 1905. In January, 1905, the state board of county assessors met with the state board of revenue in Carson City, Nevada, in accordance with an act of the Legislature of the State of Nevada (Stats. 1901, p. 61, c. 50, and as amended by Stats. 1903, p. 95, c. 69), and fixed the valuation for the purpose of taxation upon the main line of the Carson and Colorado Railway Company at $3,500 a mile, and the side track at $1,250 a mile. Thereafter, when the county assessor of Esmeralda County came to assess the railroad property of defendants, he placed the same valuation thereon as fixed by the state board of county assessors. When the county board of equalization of Esmeralda County met as required by law in September, it raised the valuation on the 88 miles of the 146 odd miles of said railroad property of said defendants in Esmeralda County, which had been broad-gaged, to $8,500 a mile on the main track and $2,500 a mile on the side track, making a total raise in the valuation as fixed and assessed by the state board of county assessors and county assessor of $489,150. This raise in valuation by the county board of equalization on the property of defendants gave rise to the present cause of action, which said action was duly tried before the District Court of the First Judicial District in and for the County of Esmeralda, and resulted in a judgment in favor of the State of Nevada against the defendants for the sum of $36,335.43, taxes and penalties, together with costs of suit.

From an order of the lower court denying a motion for a new trial, and from said judgment rendered in this case, defendants appeal, alleging that said judgment is erroneous for the following reasons:

First—That because the state board of county assessors fixed the valuation upon said railroad of defendants at $3,500 a mile for the main line and $1,250 a mile for the side line, and that the county assessor had assessed the property at the

same figure, the county board of equalization had no authority to add to the valuation as fixed by the state board of county assessors and as assessed by the county assessor.

Second—That no legal notice was given to the Carson and Colorado Railway Company by the county board of equalization before the increased valuation was added to its lines, nor were they given an opportunity to appear before said board and show cause why such raise should not be made.

Third—That the changes and additions made in the assessment roll were not made by the person legally authorized to make them, but were made by the clerk of the board of equalization, when, as alleged, the statute requires the auditor to make any additions to said assessment roll after they have been made by the county board of equalization.

Fourth—That at the time said increase in the valuation of the property assessed to the Carson and Colorado Railway Company was made by the county board of equalization the property did not belong to the Carson and Colorado Railway Company, the same having been sold to the Nevada and California Railway Company.

Fifth—That after the lien attaches upon property in this state, which is on the first Monday in March, as alleged by counsel for appellants, the enhanced value of property cannot be assessed; that whatever property is subject to taxation must be in existence on or before the first Monday in March.

Sixth—That the assessment of property in this state fixes on the first Monday in March at the time of the levy of the tax, and that property must be assessed at the valuation of this date, and, further, that no property coming into existence or into the state after this date can be placed on the assessment roll for that year.

Seventh—That the defendants paid to the county treasurer of Esmeralda County the sum of $14,886.94, the amount due on said valuation of said road as fixed by the state board of county assessors and county assessor, which said sum was refused by the county treasurer as payment in full for all taxes due to said plaintiff from said defendants.

It is seriously and urgently contended by counsel for the respondent on this appeal that the act of our legislature to

provide for a more uniform valuation and assessment of property in this state as approved March 16, 1901 (Stats. 1901, p. 61, c. 50), and as amended by the legislature of 1903 in the statutes of that year (p. 95, c. 69), which said acts created the state board of county assessors and which limit the powers of the county boards of equalization, are, for many reasons assigned, unconstitutional, and which contention, if true, asserts respondent's counsel, would thoroughly justify said board of equalization in adding the increased valuation in question to the assessment roll. After very careful consideration and study of the law involved in this case, we have concluded that it will be unnecessary, for reasons hereafter disclosed, to pass upon or consider the constitutionality of the acts in question.

It appears from the record in this case that the state board of county assessors convened in January in accordance with law, and placed a valuation on the main track of defendants at $3,500 a mile and on the side line at $1,250 a mile. At this time of the year, be it remembered, said Carson and Colorado Railroad was narrow-gaged; that thereafter the county assessor assessed the said railroad property at the same figure as fixed by the state board of county assessors. In September, when the county board of equalization convened, they raised the valuation on the 88 miles of broad-gaged road of defendant to $8,500 on the main track and $2,500 on the side track. During the intervening period, between the date of the fixing of the valuation by the state board of county assessors and the date of the convening of the county board of equalization, 88 miles of the 146 odd miles of the railroad of said defendant in Esmeralda County were changed into standard, broad-gaged road, which materially enhanced the value of said property of said defendant; this necessarily being so because of the fact that in broad-gaging a narrow-gage road new rails of a heavier weight, new ties, new culverts, and, in fact, all materials used in the replacing of the narrow-gage material are of a heavier and superior value.

Section 1 of an act of our legislature entitled "An act to amend an act entitled 'An act to provide for a more uniform

valuation and assessment of property in this state,' approved March 16, 1901," which is the section in question, which is urged by appellant as inhibiting the county board of equalization from equalizing any property upon which a valuation has been placed by the state board of county assessors, and which section, among others, is alleged to be unconstitutional by the respondent, reads as follows:

"The county assessors of the several counties of this state shall meet for a period not exceeding ten days in the office of the governor at Carson City, Nevada, on the second Monday in January of each year, and shall at such meetings establish a valuation through the state of all railroads and rolling stock of such railroads, of all telegraph and telephone lines, of all electric-light and power lines, of all cattle and sheep, and upon all other kinds of property which in the judgment of said assessors can be valued and assessed more uniformly by said assessors, acting collectively, than by the several county assessors, acting separately; *provided*, that in fixing such valuation the location and situation of such property shall be considered; *and, provided further*, that nothing herein shall be considered as to impair the right of the board of equalization of any county to equalize taxes on all property, the valuation of which has not been fixed at the annual meeting of the county assessors as provided in this section; but the said county board of equalization shall not have the power to equalize any property upon which a valuation has been placed by said board of county assessors; *provided*, any taxpayer under the provisions of this act shall not be deprived of any remedy or redress in a court of law relating to the payment of taxes." (Stats. 1903, p. 95, c. 69.)

Section 1084 of the Compiled Laws, pertaining to the assessment of property in Nevada, provides, among other things, that "between the date of the levy of taxes and the first Monday of September in each year, the county assessor, except when otherwise required by special enactment, shall ascertain, by diligent inquiry and examination, all property in his county, real or personal, subject to taxation, and also the names of all persons, corporations, associations, companies, or firms, owning the same; and he shall then determine

the true cash value of all such property, and he shall then list and assess the same to the person, firm, corporation, association, or company owning it."

Section 1081 of the Compiled Laws of Nevada provides that "all property of every kind and nature whatsoever, within this state, shall be subject to taxation," excepting certain property of widows, cemeteries, lodges, churches, and certain lands belonging to the United States, and other state and municipal authorities, mines and mining claims, under certain conditions.

Section 1079 of the Compiled Laws reads as follows: "Every tax levied, under the provisions or authority of this act, is hereby made a lien against the property assessed, and a lien shall attach upon the real property for the tax levied upon the personal property, of the owner of such real estate, which lien shall attach upon the day on which the taxes are levied in each year, on all property then in this state, and on all other property whenever it reaches the state, and shall not be satisfied or removed until all the taxes are paid, or the property has absolutely vested in the purchaser under a sale for taxes."

It is the theory of the law of taxation and revenue in this state that all tangible real and personal property shall be assessed each year once at its full cash value. We have found no authority in this state in conflict with the doctrine laid down in the case of *State of Nevada* v. *Earl, et al.,* 1 Nev. 397, wherein this court in referring to this theory said: "The true theory of the statute is that each piece of tangible real or personal property within the state between the first Monday of May and the first Monday of November, each inclusive, should be taxed once at its true value, and only once."

Viewing these various provisions of our statutes bearing on taxation and the manner of assessment, we are of the opinion that there is no material conflict, and that all of these statutes can readily be reconciled. The railroad property of appellant when assessed by the state board of county assessors was a narrow-gage road. The assessor of Esme-·ralda County at the time he made the assessment of this property assessed said property at the same valuation placed

on it by the state board of county assessors, and in conse-
quence his assessment, as far as it went, is valid.  If the
road had been changed from a narrow-gage to a broad-gage
road at the time he made the assessment, it, or so much of
it as had been broad-gaged, under our construction of the
law, should have been assessed, and it would have been his
duty to have assessed the increased valuation in said road,
or, in the event it was not broad-gaged at the time he made
his assessment, if the road was broad-gaged any time before
he completed his tax list or assessment roll on or before the
second Monday in September and turned same over to the
clerk of the board of county commissioners, he should have
added this increased valuation to his assessment roll.  Hav-
ing failed to do this, as in the present case, the county board
of equalization had the full authority under the law to add
to the assessment as made by the state board of county
assessors and the county assessor the increased valuation
due to improvements, betterments, and additions which
occurred since the date of the assessment, and under these
circumstances it became the duty of the board of equaliza-
tion to equalize any property which had been assessed at an
undervaluation of its full cash value.  (*State* v. *Meyers*, 23
Nev. 274, 46 Pac. 51.)

We think it is a reasonable construction to place upon the
amendment of 1903 above quoted that the inhibition upon
the county board of equalization, equalizing the valuation of
property which has been fixed by the state board of county
assessors, only applies when such property remains in sub-
stantially the same condition, and that it does not apply to
property which has materially changed in form and value
since the meeting of the state board.  Any other construc-
tion does violence to the general policy of our revenue laws.
The valuation as placed by the county board of equalization
on the said road is not pleaded in the answer of defendant
as excessive, nor is it shown anywhere in the record to be
excessive.

If appellant had desired to raise the issue of excessive valu-
ation, it should have prepared its answer in accordance with
section 1124 of our Compiled Laws, which section provides

just what defenses may be set up in tax suits. Neither is it claimed by the defendant that this increased valuation made in the property of the railroad was ever subjected to taxation before during the year 1905, nor that said increased valuation was ever assessed by the state board of county assessors, and it could not have been, because at said date of assessment by said state board of county assessors it was a narrow-gage road.

We are of the opinion that all property must be assessed which comes into existence in the State of Nevada either in the nature of additions, betterments, or improvements, or being new property coming into the state during the time intervening between the first Monday in March and the first Monday in September, inclusive, of each year so long as said property has not before been subjected to taxation for said year; that if property which is assessed in January by the state board of county assessors enhances in value because of betterments or improvements, as is the case in the present instance, before the first Monday in September, the assessor should assess the valuation on said property as assessed by the state board of county assessors plus any additional or increased valuation which accrues to said property, and that, if he fails to do so, the county board of equalization are authorized to equalize the property at its full cash value, to the end that no property in the state may escape taxation once during the year.

Many, if not the majority, of the states have constitutional or statutory provisions fixing a day certain in each year with reference to which the valuation of real and personal property shall be fixed, as, for example, the statute of the State of California, following a similar constitutional provision of said state, provides: "The assessor must, between the first Mondays of March and July of each year, ascertain the names of all taxable inhabitants and all property in his county subject to taxation, except such as is required to be assessed by the state board of equalization, and must assess such property to the persons by whom it was owned or claimed, or in whose possession or control it was at 12 o'clock m. of the first Monday of March, next preceding." Many

authorities are cited by counsel for the appellant, based upon such constitutional or statutory provisions, holding that property which is not within the state upon the day fixed, or improvements made upon the property subsequent to such day, is not liable to assessment for that year. But, as there is no such constitutional or statutory provision in this state, these authorities are inapplicable. (*State* v. *Earl*, 1 Nev. 397.) All property in the State of Nevada not exempt from taxation which is in this state on the first Monday in March; and all property coming into the state not exempt from taxation after the first Monday in March to and including the first Monday in September, is subject to taxation for that year, and a lien attaches to all taxable property which is in the state on the first Monday in March, and also attaches immediately to all taxable property coming into the state after the first Monday in March to and including the first Monday in September. (Comp. Laws, 1079.)

It is contended by appellant that they did not receive any notice of the intended raise to be made on the property of appellant, and were given no opportunity to be heard before said board of equalization in the consideration of the additional valuation added to its property. The record discloses the following testimony given by Mr. Atchison, clerk of the county board of equalization: "Mr. John G. Atchison continued in direct examination: (By Judge Mack): Q. As deputy county clerk and acting for the clerk, at the time the board of equalization was in session, did you give the defendant any notice of the intended raise by the board of equalization in the assessment of the defendant? A. Yes, sir. Q. How did you give that notice? A. There was a printed form which is used for that purpose, and I sent one to the secretary of the Carson and Colorado Railway Company, at Carson City, and another notice to San Francisco. Mr. Pyne has showed me a copy of a notice since he has been in town, and it might be possible we notified the San Francisco office in the name of the Carson and Colorado Railway Company; but the other notice was sent to the Carson and Colorado Railway Company, Carson City, to Mr. Yerington. Q. Have you a copy of that notice? A. No,

sir. Q. Can you give, from memory, the substance of the notice? A. I can, except the printed form. Q. Did you see the printed notice? A. Yes, sir. Q. Did you affix the seal to it? A. Yes, sir; affixed the seal. Q. To whom did you send the notice? A. I sent the one to Carson City to E. B. Yerington, secretary of the Carson and Colorado Railway Company. The second was sent to E. B. Ryan, San Francisco. It is nearly a year ago, and it seems to me I asked Mr. Henley, at that time, the course to pursue, knowing it was an important case. Q. In the notices was the fact set forth that the board of equalization was going to make the raise? A. Yes, sir. Q. Was a time fixed for them to appear and show cause? A. Yes, sir. Q. Was any notice published in the paper relative to it? A. Not that I know of." It also appears from the transcript, pages 24, 46, 47, that notice of the added valuation was published in the *Walker Lake Bulletin* in accordance with section 1098 of Nevada Compiled Laws, which said section is merely directory. (*State v. Washoe County*, 14 Nev. 140; *State v. Northern Belle*, 15 Nev. 385.) While there may be some conflict in the testimony as to whether or not proper and regular notices were duly given the defendant, yet we deem the finding of fact by the court upon this question conclusive, and this in accordance with a well-defined line of authorities holding that a finding of fact will not be disturbed where there is substantial evidence to support it.

And, for the same reasons that the previous error is not reversible and an additional legal reason hereafter given, appellant's contention that at the time of the action of the county board of equalization when it added the increased valuation complained of the property in question belonged to the Nevada and California Railroad Company, we deem the finding of fact of the lower court against appellant's contention conclusive, and it will not be disturbed. Appellant failed to allege in its answer that at the time of the assessment by the state board of county assessors or county assessor the property in controversy was not the property of the Carson and Colorado Railway Company. Section 1124 of our Compiled Laws, in defining what defenses may be

interposed in tax suits when denying title of property, expressly states that the defendant must deny "all claim, title, or interest in the property, assessed at the time of the assessment," and in consequence this assignment of error cannot avail it anything on this appeal. The county board of equalization has no assessorial powers, but equalizes the assessment by adding to or deducting from the assessment as made by the assessor.

The error assigned by appellant that the changes and corrections made in the assessment roll by the county board of equalization must be done by the auditor, instead of the clerk of the board of equalization, is not well taken. Section 26 of an act entitled "An act to amend an act to provide revenue for the support of the government of the State of Nevada and to repeal certain acts relating thereto," etc., approved February 25, 1893 (Stats. 1893, p. 48, c. 48), reads: "During the session, or within five days after the adjournment of the board of equalization, its clerk shall enter upon the assessment roll all the changes and corrections made by the board, and shall immediately deliver said corrected roll, with his certificate attached, to the county auditor." As this is the latest expression of the legislative will upon this point, though seemingly in conflict with the statute directing the auditor to place the changes and alterations on the assessment roll, it was not error for the clerk to have made the changes and alterations as made by the county board of equalization on said assessment roll. As it is not claimed that the alterations and corrections by the clerk of said board were erroneously made, and it affirmatively appearing that they truly represent the alterations and corrections as made by the county board of equalization, even conceding that the auditor should have made the alterations and changes, no material harm to appellant could arise, nor is any claimed to have arisen, from this particular assigned error, and would therefore not be so serious an error as to warrant a reversal of the judgment on this score.

The assessment and added valuation of said property having been legally made, the county treasurer was right in refusing to accept $14,886.94 tendered in full payment for

the taxes due on the property of the defendant for the year 1905.

For the foregoing reasons, the judgment of the lower court is affirmed.